**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| HEADWATERS, INC.,<br>*a Massachusetts corporation,*<br><br>                     *Plaintiff,*<br>    v.<br><br>THE PARTNERSHIPS AND<br>UNINCORPORATED ASSOCIATIONS<br>IDENTIFIED ON SCHEDULE A,<br><br>            *Defendants.* | Civil Action No. 1:21-cv-06303<br><br>Honorable Judge John Robert Blakey |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR EMERGENCY MOTION TO VACATE THE
<u>PRELIMINARY INJUNCTION AND DISMISS THE COMPLAINT</u>**

# **TABLE OF CONTENTS**

I.       INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND............................................................................... 3

III.    ARGUMENT ....................................................................................................... 6

    A.    Plaintiff Improperly Filed a Schedule A Complaint Against Defendants in this District to Obtain *Ex Parte* Relief.............................................................. 6

    B.    No Subject Matter Jurisdiction Exists as to Aviair SG who Operates Solely Internationally and Has No US Activity. ...................................................... 8

    C.    There is no Personal Jurisdiction Over the Defendants. ............................... 8

    D.    Venue in this District is Not Proper as to Aviair US and NY Bulbs. ......................... 10

    E.    Joinder of the #9 Online Marketplace Defendant is Improper. .................................. 11

    F.    Defendants were Not Properly Served.......................................................... 12

    G.    Plaintiff's Bond is Insufficient in Light of the Substantial Harm to Defendants........ 13

    H.    Plaintiff's Complaint Fails to State a Claim for Patent Infringement......................... 14

    I.     Sanctions are Appropriate Under 28 U.S.C. § 1927. .................................... 16

IV.    CONCLUSION.................................................................................................. 16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Bridal & Prom Indus. Ass'n, Inc. v. The P'ships and Uninc. Ass'ns Identified on Schedule A*,
192 F. Supp. 3d 924 (N.D. Ill. 2016) ............................................................... 7, 8, 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................... 14, 15

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................... 14

*Estée Lauder Cosmetic Ltd. v. The P'ships and Uninc. Ass'ns Identified on Schedule A*,
334 F.R.D. 182 (N.D. Ill. 2020) ................................................................ 12

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
831 F.3d 1369 (Fed. Cir. 2016) .................................................................. 8

*In re Cray Inc.*,
871 F.3d 1355 (Fed. Cir. 2017) ................................................................ 10

*In re Google LLC*,
949 F.3d 1338 (Fed. Cir. 2020) ................................................................ 11

*LG Elecs., Inc. v. P'ships and Uninc. Ass'ns Identified in Schedule A*,
No. 21-cv-2600, 2021 WL 5564864 (N.D. Ill. Nov. 29, 2021) ............................... 11

*Luxottica Grp. S.P.A. v. The P'ships and Uninc. Ass'ns Identified on Schedule A*,
391 F. Supp. 3d 816 (N.D. Ill. 2019) ......................................................... 13

*Microsoft Corp. v. AT&T Corp.*,
550 U.S. 437 (2007) ............................................................................... 8

*O.I. Corp. v. Tekmar Co.*,
115 F.3d 1576 (Fed. Cir. 1997) ................................................................ 16

*Parsons v. Shenzen Fest Tech. Co.*,
No. 18 CV 08506, 2021 WL 767620 (N.D. Ill. Feb. 26, 2021) ......................... 12, 13

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
137 S.Ct. 1514 (2017) ........................................................................ 10, 11

*Torco Oil Co. v. Innovative Thermal Corp.*,
730 F. Supp. 126 (N.D. Ill. 1989) ............................................................. 10

**Statutes**

28 U.S.C. § 1391 ...................................................................................... 11

ii

28 U.S.C. § 1400 .................................................................................................................. 2, 10, 11

28 U.S.C. § 1404 .................................................................................................................. 11

28 U.S.C. § 1927 .................................................................................................................. 16

35 U.S.C. § 271 .................................................................................................................... 8

35 U.S.C. § 299 .................................................................................................................... 2, 12

**Rules**

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 14

Fed. R. Civ. P. 4 .................................................................................................................. 12

Fed. R. Civ. P. 4(f)(3) ......................................................................................................... 12

## I.     INTRODUCTION

Emergency relief is necessary because Plaintiff's *ex parte* preliminary injunction is irreparably harming Defendants' reputation and goodwill by falsely portraying them as offshore counterfeiters and is threatening Defendants' business relationships and licenses with third-parties.

Under the guise of a Schedule A complaint against Chinese counterfeiters, Plaintiff filed its inept patent infringement Complaint against a United States-based competitor and its affiliates, relying on misrepresentations, plagiarized pleadings, and a deficient pre-suit investigation to obtain a sweeping *ex parte* injunction.  Notably, the injunction does not just prevent Defendants from selling allegedly infringing products, but rather broadly extends to Defendants' financial accounts and domain names without justification, thereby anticompetitively restraining trade on non-accused products inside the United States and lawful trade wholly outside the United States.

The misrepresentations start in the Complaint and continue throughout Plaintiff's filings. While Plaintiff claims that Defendants are a "sophisticated counterfeiting operation" (Dkt. 8 at 2) consisting of "all residents of China" (Dkt. 12 at 3), in reality, Defendants consist of: (1) United States-based Aviair LLC—a registered California company, (2) Aviair's United Sates distributor—a registered New York company, (3) Aviair's owner—a United States citizen currently living in Taiwan, (4) Aviair's international manufacturing affiliate, Aviair Global, and (5) Aviair's independent Singaporean distributor—who only operates in Singapore.  Defendants in various capacities develop, manufacture, and sell their own products under the AVIAIR brand and ***are not counterfeiters***.  Defendants offer dozens of small appliance products, one of which is a personal air purifier that competes with Plaintiffs. Other of Defendants' unrelated product offerings include humidifiers, heaters, large space air purifiers, and a revolutionary salt-based sanitizing system proven to kill the Coronavirus in 20 seconds.  Defendants further partner with

well-known United States companies, including Morton Salt, in bringing products to market.

Multiple independent grounds require immediate dissolution of the present preliminary injunction against Defendants and dismissal of the Complaint. *First*, a faulty predicate underlies the injunction, namely that Defendants are nefarious counterfeiters hiding their identities and contact information. Plaintiff's filings are rife with misstatements and typos, seemingly the result of Plaintiff copying much of its filings and declarations verbatim from another law firm's trademark and copyright Schedule A matters. Even a cursory pre-suit investigation would have revealed Defendants are legitimate domestic businesses, with readily discoverable addresses and agents for service of process. Put simply, this should have been filed as a standard patent infringement complaint, not a Schedule A complaint coupled with *ex parte* relief and electronic service. *Second*, ***neither Plaintiff nor Defendants have any connection to Illinois***. This is textbook forum shopping by Plaintiff—a Massachusetts company with attorneys in Michigan. The Court variously lacks personal jurisdiction over all Defendants and lacks subject matter jurisdiction over those that solely operate outside of the United States. *Third*, the patent venue statute, 28 U.S.C. § 1400—which is noticeably absent from Plaintiff's filings—dictates that venue in this District is improper for the domestic Defendants. *Fourth*, the eBay marketplace Defendant (#9 Online Marketplace) has not sold an accused product and is improperly joined under 35 U.S.C. § 299. *Fifth*, Plaintiff's misrepresentations regarding Defendants and the law erroneously resulted in an Order permitting electronic service. Where the domestic Defendants have easily identifiable addresses, this alternative service method is improper and ineffective. Further, under the law in this District, Plaintiff should have sought service through the Hague Convention for the foreign Defendants prior to resorting to electronic service. *Sixth*, putting aside all of the other issues with the injunction and Complaint, the barebones Complaint itself should be dismissed for failure to

state a claim for patent infringement of either of the two patents-in-suit.

Defendants, therefore, request emergency relief to vacate the preliminary injunction and dismiss the Complaint.

## II.    FACTUAL BACKGROUND

On November 24, 2021, Headwaters, a Massachusetts company, filed its Complaint alleging infringement of U.S. Patent No. 6,919,053 ("the '053 Patent") and U.S. Patent No. 9,737,895 ("the '895 Patent") against a list of "partnerships and unincorporated associations identified on Schedule A," which Plaintiff represented as being "residents of the People's Republic of China or other foreign jurisdictions." (Dkt. 1 at ¶ 2).  Schedule A to the Complaint identified nine "Seller Aliases" and nine corresponding "Online Marketplaces":

| No. | Seller Aliases |
|-----|----------------|
| 1 | AVIAIR US |
| 2 | AVIAIR |
| 3 | Aviair |
| 4 | Aviair SG |
| 5 | NY Bulbs Management, LLC dba US Bulb & Energy |
| 6 | Shu-Hsien Chou, Bellson |
| 7 | Chou Shu-Hsein |
| 8 | Aviair SG |
| 9 | Aviair |

| No. | Online Marketplaces |
|-----|---------------------|
| 1 | https://www.amazon.com/sp?seller=A2R0SKNIXGGULS |
| 2 | http://www.aviair.us/ |
| 3 | https://aviair-global.com/ |
| 4 | https://aviairsg.com/ |
| 5 | https://www.amazon.com/sp?seller=A2R0SKNIXGGULS |
| 6 | unknown |
| 7 | unknown |
| 8 | https://m.facebook.com/Aviair-SG-102372978242000/ |
| 9 | https://www.ebay.com/p/4024838467#ProductDetails |

Plaintiff then took no action for two-and-a-half weeks.  On December 13, 2021, Plaintiff moved *ex parte* for a temporary restraining order and electronic service.  (Dkts. 6-12).  Plaintiff misrepresented to the Court in these filings that Defendants "run a sophisticated counterfeiting operation" out of China.  (Dkt. 8 at 2; Dkt. 12 at 2-3).  The next day, the Court issued an Order to Show Cause to Plaintiff based on 35 U.S.C. § 299.  (Dkt. 13).  After receiving Plaintiff's response, the Court granted the *ex parte* temporary restraining order with a $10,000 bond and granted the

motion for electronic service. (Dkts. 14-17). The temporary restraining order was thereafter extended until January 26, 2022. (Dkts. 18-20). Plaintiff purportedly served Defendants via email on January 26, 2022 and published the Complaint online on January 12, 2022. (Dkt. 23). Defendants did not receive any pre-suit communication from Plaintiff and were not aware of Plaintiff's Complaint, the temporary restraining order, or the online service publication until January 26, 2022. (Ex. A, Chou Decl. ¶ 21; Ex. B, Satin Decl. ¶ 9).

On January 26, 2022, Plaintiff moved *ex parte* for a preliminary injunction. (Dkts. 24-25). Unbeknownst to Defendants, two days later, the Court granted Plaintiff's "unopposed" motion for the same reasons it granted the temporary restraining order. (Dkts. 26-27). The preliminary injunction granted sweeping relief to Plaintiff beyond its specific patent infringement claims, including the disabling and transferring of Defendants' domain names, freezing Defendants' financial accounts and assets, and expedited discovery. (Dkt. 27). As of the filing of this Motion, numerous of Defendants' financial accounts are frozen, essentially shutting down Defendants' business, including Defendants' ability to lawfully sell non-accused products and sell outside of the United States. (Ex. A, Chou Decl. ¶¶ 35-42; Ex. B, Satin Decl. ¶¶ 10-12).

Contrary to Plaintiff's allegations, Defendants are **not Chinese counterfeiters**. Rather, Defendants are legitimate domestic and international businesses selling a wide range of products, including air purifiers, heaters, and sanitization systems. (Ex. A, Chou Decl. ¶¶ 5, 8, 18-20).

The Parties compete in the air purifier space. In an Amazon review from July 2021, submitted as evidence by Plaintiff with its temporary restraining order motion, a consumer touted Aviair's personal air purifier product as superior to Plaintiff's Airtamer product. (Dkt. 9 at 14).

Since 2020, Aviair has focused on water sanitizing systems to combat COVID-19 and other disease-causing pathogens. (Ex. A, Chou Decl. ¶ 18). Defendant Chou owns five United States

trademark registrations for the AVIAIR mark for various goods including air purifiers (Ex. A, Chou Decl. ¶ 5), which public records provide addresses for Mr. Chou—a fact known by Plaintiff as these registrations were cited in its Response to the Order to Show Cause (Dkt. 15 at 10).

Aviair US is a registered California company that identifies Mr. Chou and a California address for service of process.  (Ex. A, Chou Decl. ¶¶ 6, 13).  NY Bulbs Management LLC is a registered New York company that provides a New York address for service of process.  (Ex. B, Satin Decl. ¶¶ 2, 9).  Despite Plaintiff's incorrect labels, the actual Defendants are:

1. Aviair LLC d/b/a Aviair US – a registered California limited liability company

2. Huizhou Aviair Electronics Co., Ltd. d/b/a Aviair Global – Aviair's international affiliate based in China

3. Aviair Singapore Pte. Ltd. ("Aviair SG") – independent third-party Singaporean distributor who uses the domain <aviairsg.sg> and does not do business in the United States

4. Bellson Chou – Aviair US and Aviair Global's owner, a United States Citizen

5. NY Bulbs Management LLC d/b/a US Bulb & Energy ("NY Bulbs") – third-party United States distributor who is a registered New York limited liability company

6. Online Marketplace #9 eBay Seller – a former reseller of Aviair who has not sold any of the accused products

(Ex. A, Chou Decl. ¶¶ 1-2, 6, 8-9, 12-15, 17, 20-25, 27-34; Ex. B, Satin Decl. ¶¶ 2, 4-8).

After receiving notification of this lawsuit via email on January 26, 2022, Defendants quickly retained counsel.  Defense Counsel contacted Plaintiff's counsel on February 1, 2022 regarding this matter.  Counsel then conferred via telephone on February 2, 2022, wherein Defense Counsel advised Plaintiff's Counsel of the deficiencies and misrepresentations in its filings leading to the preliminary injunction, and demanded Plaintiff voluntarily move the Court to dissolve the

injunction. Plaintiff represented that it had not, and would not, serve the preliminary injunction on any third parties. That representation was false. Defendants' PayPal account—used for its international business for all of its products—was frozen last night based on Plaintiff's submission of the preliminary injunction order. (Ex. A, Chou Decl. ¶ 41). NY Bulb's Amazon account, which sells numerous non-accused products, also was frozen on February 3, 2022. (Ex. B, Satin Decl. ¶¶ 10-12). Plaintiff's actions have essentially stopped Defendants' business. (Ex. A, Chou Decl. ¶ 41). Plaintiff has refused to withdraw the preliminary injunction without Defendant agreeing to negotiate payment to Plaintiff, necessitating the filing of the present motion by Defendants.

## III. ARGUMENT

### A. Plaintiff Improperly Filed a Schedule A Complaint Against Defendants in this District to Obtain *Ex Parte* Relief.

Schedule A cases are meant to provide a mechanism for plaintiffs to obtain relief against foreign counterfeiters and infringers who operate anonymously and are difficult to identify and stop. This is not one of those cases.

The Aviair Defendants develop, manufacture, and sell a variety of products, including air purifiers, humidifiers, heaters, and sanitization systems. (Ex. A, Chou Decl. ¶ 19). For example, Aviair US openly and notoriously operates the domain aviair.us and is registered to do business in the United States. (Ex. A, Chou Decl. ¶¶ 6, 8-13). Aviair sells products in the United States through its New York distributor, Defendant NY Bulbs. (Ex. B, Satin Decl. ¶¶ 4, 8). Defendant Aviair Global is Aviair US's international affiliate and Defendant Aviair SG is an independent Singapore-based distributor of Aviair products owned by a third-party. (Ex. A, Chou Decl. ¶¶ 14-15, 22-25, 27). Defendant Chou is the owner of Aviair and has five United States trademark registrations for the AVIAIR mark. (Ex. A, Chou Decl. ¶¶ 1, 5). Contact information for all of these entities, including mailing addresses, is readily available online and in respective corporate

and USPTO filings.  (*See, e.g.*, Ex. C, Becker Decl. ¶¶ 2-12, 18).

Although inadequately pled and lacking proper jurisdiction and venue, as discussed *infra*, the Complaint asserts patent infringement claims against a United States company, its owner, its distributors, and its foreign affiliates who compete in the air purification space against Plaintiff. Instead of filing suit for patent infringement and proceeding with a typical schedule, Plaintiff has utilized misrepresentations to take advantage of the Schedule A procedure, misleading the Court to obtain injunctive relief, freeze Defendants' assets, and attempt to transfer Defendants' domain names in order to extort a settlement.

Plaintiff repeatedly mischaracterizes Defendants and their actions using inflammatory language, referring to Defendants as running "a sophisticated counterfeiting operation" to sell "Unauthorized Headwaters Products"—but yet Plaintiff contradicts its own assertion by acknowledging that Defendants use their own Aviair brand on their products and thus are explicitly and unambiguously not selling counterfeits.  (Dkt. 8 at 2; Dkt. 1 at ¶ 18).  A legitimate product that may infringe a patent is not a counterfeit.

Most disturbing is that Plaintiff's filings are significantly plagiarized from other Schedule A cases filed by the Greer, Burns & Crain Ltd. firm.  For example, the Motion for Electronic Service and related Misterovich Declaration in this case (Dkts. 12, 12-1) have paragraphs that are nearly verbatim facsimiles of the Greer Firm's filings. (*See* Exs. E-F).  Plaintiff further forum shopped by filing in this District, despite none of the parties having any connection to this District.

Indeed, this case is not unlike the *American Bridal* matter wherein the plaintiff failed to conduct reasonable pre-suit diligence and improperly sued legitimate businesses with no connection to this District. *See generally Am. Bridal & Prom Indus. Ass'n, Inc. v. The P'ships and Uninc. Ass'ns Identified on Schedule A*, 192 F. Supp. 3d 924 (N.D. Ill. 2016) (Blakey, J.).

**B. No Subject Matter Jurisdiction Exists as to Aviair SG who Operates Solely Internationally and Has No US Activity.**

Under 28 U.S.C. § 1338, district courts have original jurisdiction over civil actions arising under federal patent law. It is well-established that US "patent law 'operate[s] only domestically and do[es] not extend to foreign activities.'" *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 454-55 (2007) (citation omitted). Thus, to be actionable, infringement must touch on and impact the United States. *See* 35 U.S.C. § 271.

There are no specific allegations that Aviair SG operates in the United States. Nor could there be because Aviair SG ***only distributes Aviair products within Singapore***. (Ex. A, Chou Decl. ¶¶ 22-28; Ex. C, Becker Decl. ¶ 13). Its website, www.aviairsg.com, restricts the sale of products to Singapore. (*Id.*). If one tries to purchase a product online from Aviair SG, the only shipping country option available during checkout is Singapore. (*Id.*). Any sales made by Aviair SG of an accused product abroad that have no relation to the United States cannot infringe a United States patent as a matter of law. *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 831 F.3d 1369, 1377-79 (Fed. Cir. 2016) ("[I]f one desires to prevent the selling of its patented invention in foreign countries, its proper remedy lies in obtaining and enforcing foreign patents.").

Because Aviair SG does not operate in the United States and has not sold any products in the United States, the Court does not have subject matter jurisdiction over it.

**C. There is no Personal Jurisdiction Over the Defendants.**

"For a TRO or preliminary injunction order to be valid, the issuing Court must have personal jurisdiction over the defendants." *Am. Bridal*, 192 F. Supp. 3d at 930. "There are two types of personal jurisdiction: general jurisdiction, which exists only when the party's affiliations with Illinois 'are so constant and pervasive as to render [it] essentially at home here' . . . and specific jurisdiction, which is 'case-specific' and exists where the defendant has 'purposefully

8

directed' its activities at residents of the forum state and where the plaintiff's claim is 'linked to the [defendant's] activities or contacts with' Illinois." *Id.* at 931 (citations omitted). An interactive website alone is insufficient to support personal jurisdiction. *Id.* at 931-33. For specific personal jurisdiction, "whether the defendants' activities are online or offline, the analysis is the same, and the Court must still focus on the defendants' contacts 'aimed' at the forum state." *Id.* at 933.

The only allegation supporting personal jurisdiction here is that "Defendants directly target business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores. Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers through which Illinois residents can purchase Infringing Products." (Dkt. 8 at 4; Dkt. 1 at ¶ 4).

Jurisdiction must be independently established for each Defendant. Instead of meeting this burden, however, Plaintiff simply lumps all Defendants together and incorrectly alleges they all operate interactive websites that target Illinois residents. No such interactive website exists for Defendant Aviair US because consumers cannot purchase products through aviair.us. (Ex. A, Chou Decl. ¶¶ 9-10). The shopping cart icon on aviair.us redirects to the Aviair Global website. (Ex. C, Becker Decl. ¶ 8). For Defendants NY Bulbs, Aviair Global and Aviair SG, the allegations relating to the targeting of Illinois residents are entirely conclusory. Aviair SG only sells to Singapore (Ex. A, Chou Decl. ¶¶ 22-28; Ex. C, Becker Decl. ¶ 13) and there are no facts alleged to suggest NY Bulbs and Aviair Global ***intentionally target customers in Illinois*** beyond merely offering products for sale online. As explained in *American Bridal*, if operating an interactive website was enough, then "personal jurisdiction would automatically exist in every state (and presumably every country even though *International Shoe* and its progeny would not apply outside the United States)." *Am. Bridal*, 192 F. Supp. 3d at 933.

9

Nor is there personal jurisdiction over Defendant Chou. Plaintiff bootstraps personal jurisdiction on Defendant Chou based on the allegedly interactive websites operated by the corporate Defendants. Defendant Chou is a United States citizen that currently resides in Taiwan. (Ex. A, Chou Decl. ¶¶ 2-4). He has never lived in and has no business in Illinois. (*Id.*). When he lived in the United States, Mr. Chou resided in California. (*Id.*). No basis for personal jurisdiction exists for him. Furthermore, "[w]here an individual's contact with a forum state is limited to acts performed in his representative capacity, the fiduciary shield doctrine directs that personal jurisdiction over that individual is improper." *Torco Oil Co. v. Innovative Thermal Corp.*, 730 F. Supp. 126, 135 (N.D. Ill. 1989). Therefore, any contacts with Illinois that the corporate Defendants may have (which are none) cannot be used to establish jurisdiction over Defendant Chou.

### D. Venue in this District is Not Proper as to Aviair US and NY Bulbs.

Even if jurisdiction existed, which it does not, venue in this District is not proper. None of the parties have any connection to this District, including Plaintiff who is a Massachusetts company and its lawyers who are from Michigan. Venue in patent matters is exclusively governed by 28 U.S.C. § 1400, which provides that patent infringement actions "may be brought in the judicial district [1] where the defendant resides, or [2] where the defendant has committed acts of infringement and has a regular and established place of business." For purposes of patent venue, a domestic defendant "resides" ***only*** in its State of incorporation under prong one. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S.Ct. 1514, 1520 (2017). Under the second prong, a plaintiff must demonstrate three requirements: "(1) there must be a physical place in the district; (2) is must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). A "regular and established place of business" means "the regular, physical presence of an employee or other agent of the

10

defendant conducting the defendant's business at the alleged 'place of business.'" *In re Google LLC*, 949 F.3d 1338, 1344 (Fed. Cir. 2020).

Despite only asserting patent claims, Plaintiff's Complaint inexplicably cites the wrong venue statute—28 U.S.C. § 1391—as the basis for filing in this District against all Defendants. The Complaint is devoid of any pleading that plausibly alleges proper venue under 28 U.S.C. § 1400 for the two domestic corporate defendants, Aviair US and NY Bulbs.

Even a cursory pre-suit investigation would have revealed the impropriety of venue in this District. Both Aviair US and NY Bulbs are domestic companies incorporated in California and New York, respectively. (Ex. A, Chou Decl. ¶¶ 6, 13; Ex. B, Satin Decl. ¶¶ 2, 6-7, 9). No defendant is incorporated in Illinois. Nor does any defendant have an established place of business in Illinois. (Ex. A, Chou Decl. ¶ 7; Ex. B, Satin Decl. ¶ 3). Accordingly, venue in this District is not proper as to Aviair US and NY Bulbs. *See LG Elecs., Inc. v. P'ships and Uninc. Ass'ns Identified in Schedule A*, No. 21-cv-2600, 2021 WL 5564864, at *1-2 (N.D. Ill. Nov. 29, 2021) (severing domestic defendants and transferring to proper venue).

While foreign corporations accused of patent infringement are subject to venue in any district, *TC Heartland*, 889 F.3d at 1359, any remaining claims against Mr. Chou, Aviair Global and Aviair SG should be transferred under 28 U.S.C. § 1404 for the convenience of parties, witnesses and in the interest of justice. To the extent any claims remain against Mr. Chou, Aviair Global and Aviair SG, they respectfully request the opportunity to fully brief a forum non conveniens motion to transfer in light of Plaintiff's forum shopping.

### E. Joinder of the #9 Online Marketplace Defendant is Improper.

Plaintiff's Schedule A provides a list of online marketplaces that it considers defendants in this litigation. #9 Online Marketplace is a link to an eBay listing for an Aviair product by a third-party reseller that previously sold an Aviair product that is not accused of infringement in this case.

11

(Ex. A, Chou Decl. ¶¶ 31-34). As shown on the eBay screenshot, the product—which is "Currently Sold Out"—is an earlier version of one of Aviair's products that has a different structure and item number: Aviair AVP-858. (Dkt. 15-6; Ex. A, Chou Decl. ¶ 34). The only accused versions of Defendants' products are Aviair 858-ES and 858-RS. (Dkt. 10). Joinder is inappropriate under 35 U.S.C. § 299 because "the same accused product" is not being offered for sale. *See, e.g.*, *Estée Lauder Cosmetic Ltd. v. The P'ships and Uninc. Ass'ns Identified on Schedule A*, 334 F.R.D. 182, 188 (N.D. Ill. 2020) (joinder improper where plaintiff could not establish that defendants sold the same products).

### F. Defendants were Not Properly Served.

Federal Rule of Civil Procedure 4 governs service to individuals and corporations. "The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the 'sound discretion of the district court.'" *Parsons v. Shenzen Fest Tech. Co.*, No. 18 CV 08506, 2021 WL 767620, at *1 (N.D. Ill. Feb. 26, 2021) (citation omitted).

In its Motion for Electronic Service (Dkt. 12), Plaintiff made material misrepresentations about Defendants that misled the Court to grant the motion. Notably, Plaintiff premised its motion on Defendants being some type of international counterfeiting scheme that conceals their identities. Plaintiff failed to allege specific facts about any Defendant to support its claims, instead relying on an attorney declaration with generalizations relating to foreign e-commerce sellers. (Dkt. 12-1). Plaintiff's lack of reasonable diligence is startling, purportedly only looking at WHOIS information prior to claiming Defendants are concealing their identity. (Dkt. 12-1). A simple corporate record search for Aviair US and NY Bulbs reveals their legitimate United States addresses in California and New York, as well as respective registered agents for service of process. (Ex. A, Chou Decl. ¶¶ 6, 11-13; Ex. B, Satin Decl. ¶¶ 2, 5-7, 9; Ex. C, Becker Decl. ¶¶ 2-7). Even Plaintiff's claim regarding the "unavailable" WHOIS data is disingenuous (Dkt. 12-1

at ¶ 4), as the WHOIS information for aviair.us provides *the same* Registrant Contact information as its corporate filings. (Ex. D, aviair.us WHOIS; Ex. A, Chou Decl. ¶¶ 13). Requesting electronic service for Defendants was unnecessary and improper, and moreover, appears to be an intentional effort solely calculated to mislead this Court to abridge Defendants' due process rights.

For the foreign defendants, Aviair Global, Aviair SG and Mr. Chou, Plaintiff similarly failed to conduct reasonable diligence. Moreover, Plaintiff was first required to attempt service through the Hague Convention prior to resorting to electronic service. *Parsons*, 2021 WL 767620 at *1-3; *Luxottica Grp. S.P.A. v. The P'ships and Uninc. Ass'ns Identified on Schedule A*, 391 F. Supp. 3d 816, 824-28 (N.D. Ill. 2019), *reconsideration denied* 2019 WL 2357011.

Even if service via e-mail and electronic publication were permissible, Plaintiff's methods do not comport with due process. *Parsons*, 2021 WL 767620 at *4 (denying leave to serve using electronic communication because plaintiff failed to provide any information on how its method comports with due process). Plaintiff did not (1) identify the email addresses it would serve in its motion, (2) explain how likely it was for Defendants to receive the summons and complaint, particularly with precautions most individuals and businesses take when receiving emails from unknown senders with links and attachments that might be hacking or phishing attempts, (3) translate the pleadings or email for the foreign defendants, or (4) attempt multiple forms of service. *Id.*; Dkts. 23, 23-1. Two days following this improper service, the Court entered a preliminary injunction against Defendants based on their failure to appear and oppose the motion. (Dkt. 26). The preliminary injunction should be vacated because Plaintiff's method of service was ineffective, in violation of the Hague Convention, and runs afoul of due process.

### G. Plaintiff's Bond is Insufficient in Light of the Substantial Harm to Defendants.

A $10,000 bond was posted by Plaintiff to cover any damage sustained by Defendants as a result of a wrongful restraint under the restraining order and preliminary injunction. (Dkt. 17 at

8; Dkt. 21). Given the freezing of Defendants' legitimate business—which unnecessarily restrains non-infringing products and non-infringing international sales—such a bond is insufficient. (*See* Ex. A, Chou Decl. ¶¶ 35-42; Ex. B, Satin Decl. ¶¶ 10-12). Furthermore, the restraints and improper allegations that Defendants are nefarious counterfeiters is causing irreparable damage to Defendants' reputation and business. To the extent any restraints on Defendants stay in place, a bond of $500,000 more accurately reflects the potential damage to Defendants from Plaintiff's wrongful restraint.

### H. Plaintiff's Complaint Fails to State a Claim for Patent Infringement.

Putting aside all other issues with the injunction and Complaint set forth above, the Complaint itself should be dismissed for failure to state a claim for patent infringement of either of the two patents-in-suit.

The Supreme Court in *Twombly* generally held that a civil complaint must go beyond providing mere notice, insisting that a Plaintiff must instead allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Moreover, "[a] formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. If a complaint still fails to "state a claim to relief that is plausible on its face," it should be dismissed under Fed. R. Civ. P. 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On this basis, the present dispute is not even a close case, as the facts underlying the Complaint in support of Plaintiff's patent infringement claims are objectively on the offending side of any standard with respect to plausibility in stating a claim to relief.

Conducting a careful review of those facts specifically recited in the Complaint directed to infringement of the patents-in-suit, there is a deafening silence with respect to the manner in which the products accused by Plaintiff infringe, failing to recite even a single fact illustrating any alignment between claim elements and features or structure in the accused products. Indeed, there

are no facts demonstrating infringement because Plaintiff appears to fail to even identify the products accused of infringement, at most stating that "[t]he products infringing on the Headwaters Patents are generally referred to as the 'Infringing Products.'" (Dkt. 1 at ¶ 5). As such, the Complaint fails to put Defendants on notice as to the products Plaintiff believes infringe or the manner in which the alleged infringement takes place. *See Iqbal*, 556 U.S. at 678.

Rather than providing proper notice supported by facts demonstrating the presence of each claim element in the accused products, Plaintiff instead makes a naked conclusory assertion that Defendants "infringe one or more claims of the '053 Patent and the '895 Patent." (*See* Dkt. 1 at ¶¶ 5 and 19). The remaining facts, to the extent that they even refer to the accused products and not Plaintiff's fever dreams regarding clandestine networks of counterfeiters, fail to provide any support for their claims of patent infringement. Accordingly, this is not a situation where facts are in dispute, or there are questions with regard to the sufficiency or accuracy of recited facts, but the complete absence of any underlying facts altogether. Dismissal is clearly warranted.

The Court should further note that beyond Plaintiff's failure to state a claim for relief for patent infringement in the Complaint, the basis of Plaintiff's TRO likelihood of success argument (Dkts. 78-79) is incomplete at best. *First*, like the Complaint, the TRO motion fails to recite a single fact in support of Defendants' alleged infringement and instead concerns itself with a description of ***Plaintiff's*** products. In the face of this complete factual vacuum, outside of what appears to be the first time that the accused products are actually identified in the record, Plaintiff nonetheless asserts that it will likely succeed on the merits with respect to direct infringement. *Second*, while Plaintiff may allege there are no claim terms in dispute or that require construction by the Court, Defendants strenuously dispute this conclusion. For example, asserted independent claim 17 of the '053 Patent was amended to recite "said ion-emitter being exposed, when in use,

15

for release of ions into the open air," which is a feature Defendants believe is not present in the accused products, clearly placing at least one term or phrase in dispute and requiring construction by this Court. *Third*, the "claim chart" provided as part of the TRO motion (Dkt. 8, Ex. E) and serving as underling support for Plaintiff's alleged likelihood of success on the merits is defective on its face and cannot demonstrate infringement. Specifically, the charted claim comprises multiple means-plus-function elements, which are limited to those embodiments disclosed by the specification and equivalents thereof, *O.I. Corp. v. Tekmar Co.*, 115 F.3d 1576, 1581 (Fed. Cir. 1997)—Plaintiff's failure to identify and demonstrate alignment with disclosed structures that correspond to claimed functions is a fatal flaw rendering it incapable as a matter of law of demonstrating a likelihood of success on the merits.

Further, as discussed *supra*, the eBay listing in #9 Online Marketplace is not an accused product in either the Complaint or Plaintiff's other filings. It should, therefore, be dismissed.

## I. Sanctions are Appropriate Under 28 U.S.C. § 1927.

Prior to filing this motion, Defendants advised Plaintiff of the misrepresentations Plaintiff made to the Court to obtain the preliminary injunction and requested that Plaintiff voluntarily dissolve the injunction. Plaintiff refused.

The blatant plagiarizing, forum shopping, and misrepresentations regarding Defendants, their business operations and activities, as well as Plaintiff's shocking failure to conduct even a cursory pre-suit investigation unreasonably and vexatiously multiplied these proceedings. Sanctions in the amount of Defendants' attorneys' fees for the filing of the present motion to vacate the preliminary injunction are therefore warranted and Defendants intend to pursue such relief.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the preliminary injunction be vacated immediately and the Complaint dismissed. To the extent any restraints stay in place,

16

Defendants respectfully request Plaintiff's bond be increased to $500,000. An award of sanctions in the amount of Defendants' attorneys' fees for the present motion is also respectfully requested.

Dated: February 3, 2022

Respectfully submitted,

/s/ *Jeffrey J. Catalano*
David S. Becker
Jeffrey J. Catalano
FREEBORN & PETERS LLP
311 South Wacker Drive, Suite 3000
Chicago, IL 60606
Tel: (312) 360-6000
Fax: (312) 360-6520
Email: dbecker@freeborn.com
Email: jcatalano@freeborn.com

Cameron S. Reuber
Yuval Marcus (*pro hac vice* forthcoming)
Matthew Kaufman (*pro hac vice* forthcoming)
Lauren Sabol (*pro hac vice* forthcoming)
LEASON ELLIS LLP
One Barker Avenue, Fifth Floor
White Plains, NY 10601
Tel: (914) 288-0022
Fax: (914) 288-0023
Email: Reuber@leasonellis.com
Email: Marcus@leasonellis.com
Email: Kaufman@leasonellis.com
Email: Sabol@leasonellis.com

*Attorneys for Defendants*

17

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on February 3, 2022, a true and correct copy of the foregoing **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR EMERGENCY MOTION TO VACATE THE PRELIMINARY INJUNCTION AND DISMISS THE COMPLAINT** was served via the Court's ECF filing system upon counsel for Plaintiff.


/s/ *Jeffrey J. Catalano*
Jeffrey J. Catalano

*Attorneys for Defendants.*